BOOS *v.* SAUER.

1. MOTOR VEHICLES—FALLING ASLEEP—GUEST PASSENGER—NEGLIGENCE.
   Assuming that accident, resulting in injury to guest passenger, was caused by truck driver falling asleep, he was guilty of at least ordinary negligence.

2. SAME—FALLING ASLEEP.
   Merely falling asleep while driving a motor vehicle is not gross negligence in this State.

3. SAME—GROSS NEGLIGENCE—FALLING ASLEEP—PRIOR WARNING.
   Gross negligence in falling asleep while driving a motor vehicle requires such prior warning of the likelihood of sleep that continuing to drive constitutes reckless disregard of consequences.

4. SAME—TRUCK DRIVER—GROSS NEGLIGENCE—GUEST PASSENGER.
   Trial court did not err in holding as matter of law that driver of truck was not guilty of gross negligence in action by guest passenger.

Appeal from Allegan; Miles (Fred T.), J. Submitted January 10, 1934. (Docket No. 115, Calendar No. 37,442.) Decided March 6, 1934. Rehearing denied June 4, 1934.

Case by Lloyd Boos, by next friend, against Walter Sauer and Max Loebel, doing business as Michigan Cottage Cheese Company, for personal injuries sustained while a guest passenger in defendants' truck. Verdict for plaintiff. Judgment for defendants *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Knight, Mitts & Schmidt* (*Leo Hoffman*, of counsel), for plaintiff.

*L. J. Carey* and *George J. Cooper,* for defendants.

Fead, J.   Plaintiff, a guest passenger in a truck, charges defendant Sauer with gross negligence in going to sleep while driving.  The court submitted the case to the jury upon plaintiff's theory and he had verdict of $2,000.   Defendant's motion *non obstante,* however, was granted and judgment entered for defendant.

For about a year Sauer had been in the employ of Loebel, delivering cheese.  His duties required him to leave Grand Rapids about 3 a. m., drive to Otsego, 40 miles away, get a load of cheese, and return to Grand Rapids to meet a 6 o'clock train.  To do this he drove at a speed of 50 to 60 miles per hour.  Later he distributed the cheese about the city, finishing in the middle of the afternoon.  Two days each week he drove to other cities and did not return until about 6 o'clock or later.  The day before the accident he was awake from 3 a. m. to bedtime, 10:30 to 11 p. m.

On the day in question he followed his routine. Plaintiff, Sauer's cousin, about 10 years old, and Joseph Skok, 14 years old, were with him.  Both were asleep at the time of the accident.  Sauer left Otsego about 4 o'clock and, when within a few miles of Grand Rapids, the truck ran off the road, struck a culvert and telephone pole, caught fire, and the occupants of the truck were injured and burned. Sauer became unconscious and so remained until evening.   Sauer testified that he did not know how the accident happened. Another driver coming from the opposite direction said his attention was called to the truck when 500 feet from it by the "slight weaving" of it on the pavement; then it hit the telephone pole and burst into flames.  A passenger with

him first saw the car lights and then the flames. Sauer had had 14 years' experience in driving, without an accident, and had driven the cheese truck for one year.

It is plaintiff's theory that the accident was caused by Sauer going to sleep. The claim must rest on inference as there was no direct testimony of the fact. The claim of gross negligence is that Sauer had been forewarned that he was sleepy and that he continued to drive at a rapid rate knowing his condition.

Sauer testified that, on this trip as on others, he had felt a little sleepy but that he was wide awake, did not shut his eyes at any time and had full control of his mental processes up to the time of the accident. The strongest evidence favoring plaintiff's theory is contained in the statement which Sauer made over a year after the accident, when he said:

"I was driving between 50 and 60 miles per hour, and while I was going at this rate of speed I didn't notice anything peculiar about how the truck handled on the road. I felt drowsy at times on this trip, and at these times I would light a cigarette and that would wake me up. * * * In order to make this train it was necessary to drive at this rate of speed unless I got up earlier in the morning. I didn't have time to stop and rest when I felt drowsy."

Without deciding that the inference is justified, we will assume that the accident was caused by Sauer falling asleep. Sauer, then, was guilty of at least ordinary negligence. *Devlin* v. *Morse,* 254 Mich. 113; *Bailin* v. *Phœnix,* 102 Cal. App. 117 (282 Pac. 421); *Whiddon* v. *Malone,* 220 Ala. 220 (124 South. 516); *Bushnell* v. *Bushnell,* 103 Conn. 583 (131 Atl. 432, 44 A. L. R. 785).

It is also the weight of authority that the mere falling asleep is not gross negligence. *Devlin* v. *Morse, supra; Krueger* v. *Krueger,* 197 Wis. 588 (222 N. W. 784); *DeShetler* v. *Kordt,* 43 Ohio App. 236 (183 N. E. 85); *Kaplan* v. *Kaplan,* 213 Iowa, 646 (239 N. W. 682). Massachusetts holds to the contrary. *Blood* v. *Adams,* 269 Mass. 480 (169 N. E. 412); *Oppenheim* v. *Barkin,* 262 Mass. 281 (159 N. E. 628, 61 A. L. R. 1228). But in that State gross negligence may be merely great negligence and does not necessarily include the element of reckless or intentional misconduct. *Learned* v. *Hawthorne,* 269 Mass. 554 (169 N. E. 557). This court many times has repudiated such conception of gross negligence and the Massachusetts cases are not in point.

Gross negligence requires wilful or wanton misconduct. *Findlay* v. *Davis,* 263 Mich. 179. To constitute gross negligence in falling asleep while driving there must have been such prior warning of the likelihood of sleep that continuing to drive constitutes reckless disregard of consequences. There must be an appreciation of the danger of falling asleep or circumstances which would cause a reasonably prudent person to appreciate it and proceed in defiance of results. It has been held that prior warning may be by way of having before gone to sleep or dozed off. *Manser* v. *Eden,* 263 Mich. 107; *Potz* v. *Williams,* 113 Conn. 278 (155 Atl. 211). Without discussing the distinction between ordinary and gross negligence, it was held in *Coconower* v. *Stoddard,* 96 Ind. App. 287 (182 N. E. 466), a question for the jury where defendant had worked all day and driven most of the night without sleep.

Sauer had slept four or five hours the day before. He was an experienced driver, accustomed to the routine. The testimony disclosed no circumstances

which tended to make him sleepier than usual. The drowsy feeling mentioned was not different than he had experienced on other trips. It was not due to exhaustion or lack of sleep or long-continued driving which would indicate that it would become uncontrollable but rather was part of a waking-up process. It did not cause a loss of consciousness or diminution of his faculties. It was remedied at once, and easily. Sauer's relation to plaintiff negatives the inference that the condition was worse than he stated. The testimony falls short of indicating that Sauer had such prewarning of a likelihood to go to sleep that his continuance to drive was an act of intentional wrong or recklessness as to consequences.

We think the court did not err in holding, as a matter of law, that Sauer was not guilty of gross negligence.

Judgment affirmed, with costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.