## STATE v. OLSEN.

No. 6802.   Decided June 27, 1945.   (160 P. 2d 427.)

See 24 C. J. S., Criminal Law, sec. 1915; 26 Am. Jur., 505.

*Walter M. Critchlow* and *Ned Warnock,* both of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *W. Stanford Wagstaff,* Asst. Atty. Gen., for respondent.

LARSON, Chief Justice.

Appeal from verdict of involuntary manslaughter and sentence of one year in the county jail, in the District Court of Salt Lake County.

The facts, not disputed, show that defendant was employed as a truck driver at Kearns Army Base. She was ordered to the Union Pacific Station to pick up some soldiers in her truck. Just after leaving Kearns, she became drowsy. She opened the windows for a breeze to combat this feeling, and drove on. She stopped for the semaphore light at 5th West and North Temple Streets, just west of the viaduct where the accident occurred. With the green light, she started to go up the viaduct, and had just shifted into third gear when she fell asleep. Defendant has no recollection of the facts of the accident, but it is not disputed that the truck went up over the right or south curb onto the sidewalk, and went along the sidewalk for some distance, striking and killing a child playing on the sidewalk. The jury returned a verdict of guilty of involuntary manslaughter, and sentence of one year in the county jail was imposed. Defendant appeals.

We shall not enter into an extended discussion of defendant's first argument for reversal. This deals with a map containing testimonial statements, drawn by one of the witnesses, and identified by him on the trial. Because all of the facts of the accident in question were admitted by defendant, we can see no prejudicial error in the use of this map, and for this reason shall not enter into an academic discussion of the rules governing the use of maps, and other testimonial documents.

Defendant's second argument is that denial of the motion to dismiss and to direct a verdict of not guilty was error. The basis of this argument is that the state failed to prove the offense charged in that there is no showing of criminal negligence sufficient to go to the jury. This is purely a question of law. In *People* v. *Robinson,* 253 Mich. 507, 235 N. W. 236, 237, the court said:

"The danger of driving an automobile on the highways by one who is not in possession of his faculties is a matter of common knowledge. This defendant knew that he had been going without sleep, that

he had been drinking that which would disturb his faculties, and that he was not in a fit condition to drive a car. An ordinarily prudent man would have known it. An ordinarily prudent man would have known that this or some other accident would probably happen while driving in that condition. So, under the circumstances as shown by his own evidence, the defendant was negligent in falling asleep. He was negligent in trying to drive a car when a man of ordinary prudence would have known it was not safe for him to do so. It was negligent for him to drive when he was weary and sleepy. It was his duty to stop driving until he had overcome his weariness and regained control of his faculties. * * *"

This case is followed and cited in *Devlin* v. *Morse*, 254 Mich. 113, 235 N. W. 812, 813, where the court also makes the observation that "the approach of sleep is indicated by premonitory symptoms." To the same effect is *Manser* v. *Eder*, 263 Mich. 107, 248 N. W. 563, 564, wherein the defendant had gone to sleep shortly before the accident, and narrowly missed a collision. After being awakened and told of the incident, defendant insisted he could still drive. The court said:

"Thus forewarned, his insistence that he continue driving, and that plaintiff remain with him, constituted such a reckless disregard for the consequences of an obvious danger and the safety of his passengers as amounted to willful and wanton misconduct."

Perhaps the leading case on this subject is *Bushnell* v. *Bushnell*, 103 Conn. 583, 131 A. 432, 435, 44 A. L. R. 785, wherein the court said:

"In any ordinary case, one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, without having been negligent. It lies within his own control to keep awake or cease from driving. And so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case, and sufficient for a recovery, if no circumstances tending to excuse or justify his conduct are proven. * * * If such circumstances are claimed to have been proven, it then becomes a question of fact whether or not the driver was negligent; and, in determining that issue, all the relevant circumstances are to be considered, including the fact that ordinarily sleep does not come upon one without warning of its ap-

proach. 5 Wigmore, Evidence (2d Ed.) § 2491. The trial court was right in leaving the issue to the jury as one of fact, but it might properly have gone farther and called attention to the last-mentioned feature of the case."

And in *Whiddon* v. *Malone,* 220 Ala. 220, 124 So. 516, 518, the court merely states:

Without extended discussion, we hold that going to sleep at the wheel while operating a car is evidence of negligence. The dangers of running a car while asleep are so obvious as to need no comment. It is the duty of the driver to keep awake or cease to drive. A failure so to do is prima facie evidence of negligence. The burden passes to the defendant to show some unusual cause of his falling asleep which reasonable diligence could not foresee nor forestall."

See also *Helton* v. *Alabama Midland R. Co.,* 97 Ala. 275, 12 So. 276; *Criez* v. *Sunset Motor Co.,* 123 Wash. 604, 213 P. 7, 32 A. L. R. 627; *Bailin* v. *Phoenix,* 102 Cal. App. 117, 282 P. 421; *Steele* v. *Lackey,* 107 Vt. 192, 177 A. 309, 310, wherein the court reviews and summarizes most of the decided cases on this subject, and quoting from *Blood* v. *Adams,* 269 Mass. 480, 169 N. E. 412, 413, says:

"Voluntarily to drive an automobile on a public street at any time of day or night with eyes closed, or to yield to sleep while operating such kind of dangerous machine as is an automobile on a public highway, is to be guilty of a degree of negligence exceeding lack of ordinary care, and is a manifestation of recklessness which may be found by judge or jury to be gross negligence within any reasonable definition of that phrase."

That suit was brought under the provisions of a guest statute so that gross negligence had to be proved for a recovery. The court held that this was a question for the jury. But to the effect that the court did not err in holding defendant not guilty of gross negligence as a matter of law, see *Boos* v. *Sauer,* 266 Mich. 230, 253 N. W. 278; *Gilliland* v. *Harris,* 25 Ala. App. 549, 150 So. 184.

The burden of the foregoing authorities is overwhelmingly that the fact of going to sleep at the wheel of an automobile, without more, at least presents a question for the jury

as to whether the driver was negligent. We think this a sound and salutary rule, for while one cannot be liable for what he does during the unconsciousness of sleep, he is responsible for allowing himself to go to sleep—to get into a condition where the accident could happen without his being aware of it, or able to avoid it. *Bushnell* v. *Bushnell*, supra. We think the jury could find such conduct to be negligence manifesting a marked disregard for the safety of others on the highway. Were this not the rule, the negligent driver of an automobile would better sleep while driving and avoid criminal and civil responsibility than remain awake and be responsible for his acts of negligence. The evidence presented an issue for the jury, and is sufficient to sustain their verdict.

Judgment affirmed.

McDONOUGH, Justice (concurring).

The ultimate question presented by this appeal is: under the evidence would a jury of reasonable men be justified in finding that defendant in driving the truck acted in marked disregard of the safety of others. If so, there was, of course, a question of fact to be presented to the jury.

I am of the opinion, though not without some doubt, that there was. There was before the jury not merely the driver's testimony that she felt drowsy several miles back from the scene of the accident, but the testimony of the route taken to arrive at such scene and her actions just prior to the fatal incident. From the fact that the driver observed the stop light, responded to its warning, shifted gears, proceeded across the intersection and, then, almost immediately fell asleep, the jury might conclude that insistent premonitions of sleep must have theretofore assailed her. For the very act of shifting gears, the jury might find would, unless there was present immediately theretofore acute symptoms of drowsiness, tend to alert the operator.

But this fact coupled with the other evidence presented a situation which but permitted the jury therefrom and from their own experience and knowledge to infer that the driver knew of her condition and continued to drive despite such knowledge. They, however, do not create any presumption which would compel the jury to so find absent explanation to the contrary. Sec. 5, Wigmore Ev., 2d Ed., Sec. 2491. If the jury might reasonably find that the driver was aware of the approach of sleep and continued to drive despite such awareness, then, considering, the area she was traversing at the time, they might reasonably find that she drove in marked disregard of the safety of others.

TURNER, J. concurs in the result.

WOLFE, Justice (concurring in part).

I cannot agree that "the fact of going to sleep at the wheel of an automobile, without more, at least presents a question for the jury as to whether the driver was negligent" when such rule is applied to a criminal case such as this. Courts have even refused to apply such a rule to a civil case wherein the plaintiff has been required to show more than ordinary negligence. *Forsman* v. *Colton,* 136 Cal. App. 97, 28 P. 2d 429; *Kaplan* v. *Kaplan,* 213 Iowa 646, 239 N. W. 682; *Boos* v. *Sauer,* 266 Mich. 230, 253 N. W. 278; *Devlin* v. *Morse,* 254 Mich. 113, 235 N. W. 812; *De Shelter* v. *Kordt,* 43 Ohio App. 236, 183 N. E. 85. Under the holding of *State* v. *Lingman,* 97 Utah 180, 91 P. 2d 457, the state is required in a case such as this to prove that the defendant was driving in marked disregard for the safety of others. A mere showing that the driver of an automobile went to sleep at the wheel will not by itself show a marked disregard.

When the driver of an automobile falls asleep at the wheel, courts in civil cases have, in addition to the fact of sleep, paid particular attention to the preceding events to determine whether or not the driver was negligent in con-

tinuing to operate the automobile. See *Steele* v. *Lackey,* 107 Vt. 192, 177 A. 309; *Marks* v. *Marks,* 308 Ill. App. 276, 31 N. E. 2d 399; *Carvalho* v. *Oliveria,* 305 Mass. 304, 25 N. E. 2d 764; *Potz* v. *Williams,* 113 Conn. 278, 155 A. 211; *Manser* v. *Eder,* 263 Mich. 107, 248 N. W. 563; *Coconower* v. *Stoddard,* 96 Ind. App. 287, 182 N. E. 466; *Boos* v. *Sauer,* 266 Mich. 230, 253 N. W. 278. As noted in *Steele* v. *Lackey,* supra [107 Vt. 192, 177 A. 310]:

> "One cannot be held to be negligent for what he does or fails to do in the operation of an automobile after he has involuntarily fallen asleep any more than he could be so held after he had suffered a stroke of paralysis, or epileptic seizure, or had suddenly been stricken blind, because the failure to exercise the requisite degree of care and prudence presupposes that the person sought to be charged is capable of sense perception and judgment. The question is, Was he negligent in permitting himself to fall asleep, or in operating the car when he knew, or ought to have known, that sleep might come upon him?"

To the same effect see *Boos* v. *Sauer,* supra; *Diamond State Tel. Co.* v. *Hunter,* 2 Terry 336, 41 Del. 336, 21 A. 2d 286; *Richards* v. *Parks,* 19 Tenn. App. 615, 93 S. W. 2d 639.

The focal point of the inquiry then must be whether or not the driver continued to operate the automobile after such prior warning of the likelihood of sleep so that continuing to drive constituted marked disregard of the safety of others. In this regard see *Boos* v. *Sauer,* supra [266 Mich. 230, 253 N. W. 279], wherein it is stated:

> "Gross negligence requires willful or wanton misconduct. *Findlay* v. *Davis,* 263 Mich. 179, 248 N. W. 588. To constitute gross negligence in falling asleep while driving there must have been such prior warning of the likelihood of sleep that continuing to drive constitutes reckless disregard of consequences. There must be an appreciation of the danger of falling asleep or circumstances which would cause a reasonably prudent person to appreciate it and proceed in defiance of results."

It has been held in civil cases that the mere fact that the

driver of an automobile went to sleep while driving rises a presumption of negligence, which if not rebutted will take the issue of negligence to the jury. The rule is stated in *Diamond State Tel. Co.* v. *Hunter* supra [2 Terry 336, 41 Del. 336, 21 A. 2d 287], as follows:

"There exists a presumption of law, if a person while engaged in the operation of a motor vehicle permits himself to fall asleep, that such conduct on his part constitutes negligence. The reason for the rule creating such a presumption is obvious. However, the rule extends no further than a presumption. It is not conclusive. The burden of proof merely shifts, so to speak, to the defendant to satisfactorily account for his conduct to the Jury, and in the event the Jury accepts the defendant's explanation of his conduct, and it is found to be sufficient, then the presumption is successfully rebutted and is of no further force and effect."

To the same effect see *Whiddon* v. *Malone,* 220 Ala. 220, 124 So. 516; *Potz* v. *Williams,* 113 Conn. 278, 155 A. 211; *Rice-Stix Dry Goods Co.* v. *Self,* 20 Tenn. App. 498, 101 S. W. 2d 132; *Brownell* v. *Freedman,* 39 Ariz. 385, 6 P. 2d 1115.

This so-called presumption of negligence has a natural relationship to the fact proved—to wit: that the driver of an automobile went to sleep at the wheel. It is a common experience of men that sleepiness does not overtake the driver of an automobile without some prior warning of its approach. Sleep does not necessarily depend upon the length of time the driver has been at the wheel, nor upon the amount of sleep the driver has had in the period immediately prior to the time of the accident, although these matters are important. Circumstances over which the driver has little control may make him sleepy. For example, exhaust fumes may seep into the interior of the car in sufficient quantity to make the driver drowsy. Yet, no matter what the cause of sleepiness, whether from exhaust fumes or complete physical exhaustion, it is not probable that sleep would overtake the driver without him having some prior warning. The jury may take this probability into account. However, I do not believe that it is correct to

say that this raises a presumption of criminal negligence. It is but an evidentiary fact to be submitted to the jury .along with all other facts and circumstances. If under all the circumstances the evidence discloses that the driver continued to operate the car without regard to premonitory symptoms of sleepiness, then the jury could find that he was driving in marked disregard of the safety of others. But a mere showing that the defendant went to sleep while driving will not by itself overcome the presumption of innocence or prima facie show criminal negligence sufficient to take the case to the jury.

Regarding the evidence. that she was asleep, the defendant's testimony shows that she left Kearns air field at 1 o'clock p. m. immediately after lunch. She proceeded to 33d South and Redwood Road, along Redwood Road to North Temple and then east on North Temple to 5th West Street. The accident happened on the viaduct on North Temple just east of 5th West Street. One witness for the state, a ten year old girl, fixed the time of the accident about 3:30 p. m. Another witness for the state, Mr. Peacock, fixed the time at about 1:30 p. m. Defendant was drowsy just as she left Kearns. She rolled down the window of the truck in an attempt to shake off the drowsy feeling. She claims to have been revived and wide awake as she approached 5th West Street stop light. She saw the light turn green and proceeded through the intersection and remembers shifting into third gear. Yet, she fell asleep immediately thereafter and careened off the highway. An officer from Kearns, who was familiar with the type of truck being driven by the defendant, testified that because of the high, constant humming noise made by the transmission of such trucks, it was difficult to stay awake while driving. Defendant admitted that she knew that this type of truck induced sleepiness.

From this evidence the jury could have concluded that the defendant was asleep at the time of the accident; that she had had at least one prior warning that sleepiness was approaching; that under the circumstances, of her just

finishing lunch, driving a truck that induced drowsiness, the warm day, etc., she did not successfully shake off the drowsiness; that she was approaching the business district. of Salt Lake City where other people could reasonably be expected to be; that she was driving a heavy truck that could cause serious injury and property damage if it careened out of control. The jury could also conclude that in the common experience of men sleepiness does not suddenly approach without any prior warning; that plaintiff reacted normally in this regard for she testified that she was forewarned of sleep. The jury could have refused to believe that she was wide awake when she approached 5th West Street. Whether, under the circumstances, she was guilty of driving in marked disregard for the safety of others in continuing to operate the automobile is probably a jury question.

I therefore concur.

WADE, Justice.

I concur with the opinion of Mr. Chief Justice Larson. I also agree with Mr. Justice Wolfe's statement that the determining question here is

"whether * * * the driver continued to operate the automobile after such prior warning of the likelihood of sleep so that continuing to drive constituted a marked disregard of the safety of others."

I also agree that sleep does not overtake the driver of an automobile without some prior warning of its approach. I think possibly there may be surrounding facts and circumstances shown which would make it so clear that the driver had no prior warning of the approach of sleep that the court would be justified in taking the case from the jury. I do not think that any such facts and circumstances were shown in this case. Nor do I think that any of the surrounding facts and circumstances here shown, except the fact that she fell asleep while driving and the experience that sleep does not overtake a driver

without prior warning, have any tendency to prove that she had warning of its approach.

Our problem is not what caused her to fall asleep. It is immaterial whether it was caused by fumes, the hum of the motor, the heat, the fact that she had lunched recently or her previous lack of sleep. Unless, prior to falling asleep, she was conscious of the fact that she was sleepy and apt to fall asleep if she continued to drive but nevertheless continued to drive, she was not guilty of a marked disregard for the safety of others. I see nothing in the fact that she felt drowsy as she left Kearns, which tends to show that she had warning that she was apt to fall asleep at the time she did. She drove several miles thereafter, and she testified that she opened the window and did not feel sleepy as she approached 5th West Street. True, the jury was not bound to believe her testimony in this regard, but the mere fact that she felt drowsy several miles back does not tend to prove that such condition continued up to the time of the accident. Nor does the fact that it was a warm day, that she had recently eaten lunch, that the hum of the motor tended to cause drowsiness, tend to prove that she did not fall asleep without any previous warning that she was sleepy. All of those conditions might exist and still the driver be alert and wide awake. To my mind the only fact in this record which tends to prove that she did not fall asleep without warning is the fact that experience teaches that a person under the tension of driving an automobile does not fall asleep without warning or the consciousness that sleep is approaching. And, as far as I know or the evidence discloses, this is just as much and no more true under the facts here disclosed than it is under other facts and circumstances. I therefore conclude that the fact of falling asleep while driving, in the absence of further showing to the contrary, is sufficient from which the jury might infer that the driver had felt sleep coming on but continued to drive in spite of the warning and in so doing acted in marked disregard of the safety of others.